IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**DENIS ANTONIO VILLALTA ARGUETA**                                       **PETITIONER**

V.                                             **CIVIL ACTION NO. 3:21-cv-209-NBB-JMV**

**BESSY NORIBETH HERNANDEZ LEMUS**                             **RESPONDENT**

### MEMORANDUM OPINION

This cause comes before the court upon the expedited motion for preliminary relief and for an expedited hearing under The Hague Convention[1] filed by petitioner Denis Antonio Villalta Argueta. Petitioner requests the preliminary relief of an order prohibiting the removal of his minor child from the jurisdiction of this court and setting a hearing for respondent, Bessy Noribeth Hernandez Lemus, the child's mother, to appear or be brought before this court with the child to show cause as to why the child has been kept from his father in contravention of Honduran law and The Hague Convention.

<u>Factual Background and Procedural Posture</u>

On September 23, 2021, Petitioner filed his Verified Petition for Return of Child to Honduras and for Immediate Issuance of Show Cause Order pursuant to The Convention on the Civil Aspects of International Child Abduction ("The Hague Convention") and the International Child Abduction Remedies Act, 22 U.S.C. §§ 9001 *et seq*. The petition, which was served on Respondent on October 14, 2021, charges that the respondent illegally and wrongfully removed

---

[1] The court construes the present motion as a motion for entry of a temporary restraining order and setting a preliminary injunction hearing pursuant to Rule 65(b) of the Federal Rules of Civil Procedure.

the parties' minor child to the United States from the proper custody and habitual residence of Honduras on September 26, 2020.²

The petition alleges that the father, the mother, and the child are all citizens of Honduras. The child was born in Maryland on December 19, 2015, while the parties were visiting the United States. Although they believed themselves to be married at the time, they later learned their marriage was not legal due to a technicality regarding the filing of the marriage license. Though the parties were visiting the United States when the child was born, they returned to Honduras thereafter and lived together as a family in Honduras until August 29, 2020.

Prior to August 2020, the parents planned a trip to visit their friend, Bessy Darlin Interiano Lopez, who lives in Southaven, Mississippi. The parents and child had visited Ms. Lopez in Mississippi on several occasions. On August 29, 2020, the mother of the child flew with the child from Honduras to Atlanta, Georgia, where Ms. Lopez met them and drove them to her home in Mississippi. Petitioner alleges that the parties had planned this trip as a family vacation, but the father's visa had expired, and he was unable to leave Honduras. The mother and child were anticipated to return on September 26, 2020, with the roundtrip tickets they had purchased prior to the trip, but the mother decided to stay over the father's objections.

From August 2020 until January 2021, the mother and child remained in the home of Ms. Lopez. The mother allowed the father to contact the child via telephone approximately three times per week from September 2020 until February 2021. In January 2021, Ms. Lopez allegedly required the mother to leave her home because she did not approve of the fact that the mother had allegedly begun dating another man, Henry Antonia Aguirre.

---

² Respondent and the child visited the United States with Petitioner's consent on August 29, 2020, but Respondent refused to return to Honduras with the child on September 26, 2020, the date of their scheduled return.

Petitioner traveled to Southaven, Mississippi and stayed with Ms. Lopez from February 5, 2021 until March 13, 2021, in an effort to reconcile with the mother and have her return with their son to Honduras. The child stayed with the father at Ms. Lopez's home during this time. Petitioner asserts that he believed a reconciliation had been reached, and the mother advised that she would be returning to Honduras with Petitioner and the child. The child's passport had expired by this time, however. Petitioner alleges that the mother advised him she would renew the child's passport as soon as possible and return with the child to Honduras.

Petitioner returned to Honduras on March 13, 2021, but was unable to bring the child with him. Since that time, the mother has refused to return to Honduras with the child. Petitioner alleges that the mother has allowed only two telephone calls between himself and the child since that date.

## Standard

Rule 65(b) of the Federal Rules of Civil Procedure provide as follows:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). The court may issue a temporary restraining order if the movant establishes "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Injunctive

relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22.

Analysis

*Likelihood of Success on the Merits*

First, under Rule 65(b), the court must find that Petitioner will likely succeed on the merits of his petition before granting the requested relief. Petitioner's verified complaint has been filed pursuant to The Hague Convention and the International Child Abduction Remedies Act ("ICARA"). "The Hague Convention was adopted to address the problem of international child abductions during domestic disputes." *Berezowsky v. Ojeda*, 765 F.3d 456, 465 (5th Cir. 2014) (citing *Lozano v. Montoya Alvarez*, 134 S. Ct. 1224, 1228 (2014)). The objectives of The Hague Convention are: (1) "to secure the prompt return of children wrongfully removed to or retained in any Contracting State," and (2) "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States." Hague Convention, Art. 1.

"When evaluating a Hague Convention claim, we do not assess the merits of the underlying custody dispute. Rather, our inquiry is limited to determining whether or not the child has been wrongfully removed from their country of 'habitual residence.'" *Berezowsky*, 765 F.3d at 465. The ultimate question for this court to answer is whether the child has been wrongfully removed or detained from his country of habitual residence by Respondent's refusal to return him from Mississippi to Honduras. Because Petitioner filed this action under The Hague Convention, he must demonstrate by a preponderance of the evidence that Honduras is the child's habitual residence in order to establish his claim that the child has been wrongfully removed and detained.

4

Because the parties lived together and put themselves forth as a married couple in consensual cohabitation with the child until August 29, 2020, no custody agreement is in place. Petitioner asserts, however, that prior to the mother's wrongful removal of the child, he was exercising custody rights within the meaning of Articles 3 and 5 of The Hague Convention in that he is the father of the child and has exercised custody rights over his son since the child was born. He further asserts that the child was a habitual resident of Honduras within the meaning of Article 3 since his birth in December 2015 until the alleged wrongful removal in August 2020. He alleges that the child was completely settled and integrated into Honduran life and culture and had resided there for the entirety of his life. The child received medical care in Honduras, attended school in Honduras, and occasionally traveled with his mother and father on family vacations.

Based on the facts presented in the verified complaint and present motion, the court finds that there is a likelihood of success on the merits for Petitioner's case. Petitioner has satisfied the first requirement for entry of a temporary restraining order.

*Likelihood of Irreparable Harm*

Considering the risk that Respondent could further relocate the child beyond the court's jurisdiction, the court finds that Petitioner is likely to be irreparably harmed in the absence of the requested relief. The court finds this element for temporary injunctive relief satisfied.

*Balance of Equities*

The court finds that the balance of equities tips in favor of Petitioner. First, this temporary restraining order merely requires that the child remain with Respondent within the jurisdiction of this court and does not impose any injury or hardship on Respondent. Second, Respondent apparently resides in Horn Lake, Mississippi, within this district and division and

will therefore not be burdened by the minimal travel required to appear at the preliminary injunction hearing.

*The Public Interest*

"The public interest analysis for the issuance of [injunctive relief] requires [district courts] to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011). Further, ICARA authorizes a court to "take or cause to be taken measures under federal or state law as appropriate … to prevent the child's further removal or concealment before the final disposition of the petition." 22 U.S.C. § 9004(a). Accordingly, the court finds no public interest that would be injured by the issuance of a temporary restraining order in this matter.

*Waiver of Security*

Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction or temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Based on the unlikelihood that Respondent will suffer any costs or damages during the pending expedited proceedings in this matter, the court hereby WAIVES any required security by Petitioner at this time. Should Respondent prove otherwise, or should the need for security arise, the court will order such security at that time.

## Conclusion

The court finds that Petitioner's request for entry of a temporary restraining order and order setting preliminary injunction hearing is meritorious. A temporary restraining order in

accordance with this opinion will be entered this day. A preliminary injunction hearing should occur at the earliest possible date with all parties present. Fed. R. Civ. P. 65(b)(3). Accordingly, the court hereby sets the preliminary injunction hearing for **Monday, November 8, 2021, at 2:30 p.m. in Courtroom 3 West of the United States Courthouse in Oxford, Mississippi**.

The expedited motion for preliminary relief and for an expedited hearing under The Hague Convention filed by petitioner Denis Antonio Villalta Argueta is **GRANTED**. The temporary restraining order entered this day will remain in effect until the preliminary injunction hearing on November 8, 2021.

Until such time, neither Respondent nor anyone else shall remove the child from the State of Mississippi nor change the child's present location within the jurisdiction of the United States District Court for the Northern District of Mississippi. The United States Marshals Service shall serve the present motion and this court's memorandum opinion and corresponding temporary restraining order on Respondent at **6475 Walnut Grove Road, Horn Lake, MS 38637**, or wherever she may be found. The United States Marshals Service shall take possession of the minor child's passports and all other travel documents, if available, for safekeeping until the preliminary injunction hearing. Finally, if counsel for Petitioner anticipates the need for a language interpreter during the preliminary injunction proceedings, they must notify the court immediately.

A separate order in accordance with this memorandum opinion will issue this day.

This 26th day of October, 2021.

/s/ Neal Biggers  
NEAL B. BIGGERS, JR.  
UNITED STATES DISTRICT JUDGE